on behalf of Charles Fortney I'd like to reserve three minutes for rebuttal. May it please the court. When the Hinkley police officers in this case were at the Aldi warehouse they did not merely keep the peace as the government claims. They were not there for mere presence. To keep the peace all they needed to do was escort Mr. Fortney off the premises after he retrieved his own belongings. But instead they decided to keep Mr. Ashbrenner safe while he searched Mr. Fortney's bag. Let me ask a question. The record is clear that when he was brought into the room and was ultimately fired the police were, according to the record, in an adjoining room. That's correct? Yeah. What isn't clear to me is at the time then that they proceeded to go toward the locker, did or did not the police know that he had been fired? I'm not aware. I don't think the record is clear on that either. What the police, although what the police did know is when they were coming there they were coming because Mr. Ashbrenner was going to fire him. It seems to me there's some relevance as to whether the police knew that he had been fired or not. I don't believe there is on the record here. I would say two points to that. One factual, one legal. The first is factually after Mr. Fortney exited the office and the officers were there in a position that prevented him from going to the locker room, Officer Ashell's testimony was that the sergeant was the one who said, who instructed everyone that they were going to go to the locker room then. Indicating that at that point the officers were the ones who were taking everyone to the locker room. The officers were in some position and had some foreknowledge that now they were going to the locker room for this search. The second is whether he had been fired or not, there was no contractual basis, there was no policy basis, there was no handbook, there was no consent that allowed Mr. Ashbrenner to search Mr. Fortney's belongings at will or based on a rumor. But the question isn't whether he did something wrong, the question is whether in doing something wrong he was a state actor. That's correct and based on the undisputed testimony, I'll say only to Mr. Ashbrenner and Mr. Ashell's testimony, Officer Ashell's testimony, the state did assist, they did more than merely keep their presence or merely keep the actors safe, they did assist and Mr. Ashbrenner said at page ID 53 that he asked the police ahead of time to protect him while he searched at page ID 66 that he'd ask the police to prevent Mr. Fortney from getting his belongings for his safety and that he could not leave with his bag, that's at page ID 66 and then Officer Ashell also testified he couldn't have left with his bag at page ID 85. And then they took actual steps to make that happen, the first is they were outside the office when Mr. Fortney exited, the second is that the sergeant directed everyone we are going to go to the locker room now and escort him. So they were there specifically to make sure that he, or because they were there he could not leave with his bag? That's correct and that's the undisputed testimony of both Mr. Ashbrenner and Officer Ashell. If they hadn't been there then he would have been able to leave? Yes, that's also the undisputed testimony. Or there would have been a dispute between the two of them? That's correct, right, and that's what the district court found is that had police not been present, this is the order at page 5, page ID 152, that Mr. Fortney would have grabbed his backpack and left. And right, that means there either would have been an incident or Mr. Fortney would have taken his own belongings and left. And at that point if there would have been an incident, right, the question is who's in the right here, right, well Ohio law is actually clear on this, which is Mr. Fortney as the property owner has a right to use reasonable force to protect his property from someone else invading it. Why, is that really so? Wasn't there a policy at this company of not having guns on the property? There was a policy. Why did he have, I mean it's their property, it's their locker, why did he have a reasonable expectation of privacy at all in the gun? I mean he wasn't allowed to be there and he's storing it in their property. He had a reasonable expectation of privacy in his bag and it was his lock on the locker, that's also clear in the testimony. So the combination of those two, yes, for their convenience they allowed their employees to store. Why do you have an expectation of privacy about something you're not allowed to have? Well he had a, the same way anybody has a reasonable right of expectation of privacy even when they have contraband in their bag or on them, is that we don't look ex post to see did you have drugs in your pocket, thus the police were ex ante allowed to search your, to rescue. Wouldn't the company have been allowed to say, listen it's our property, no guns, and we do random searches? Yes, absolutely, and if they had that policy. Why does it have to be a policy? Because under Ohio law the default is that they don't have that right, and so just like any other private actors, Mr. Fortney could, if made aware of that policy, could decide whether to continue his employment or not, could decide, all employees could decide whether they wanted to bring items to the warehouse or not, but the background of Ohio law is that a private actor, even an employer, even a business, makes no distinction, doesn't have a right to invade someone else's property. What's in the record about what their policy was? What's in the record is officer, or Mr. Ashbender's testimony, that they had a policy that employees were not allowed to have guns on the premises. Was there a handbook, something like that? It was simply his testimony that there was that policy, that's the only thing on the record on that. What about this point from the, you know, this has a no good deed goes unpunished flavor to it from the officer's perspective. They get a call that, hey, you know, we're not sure what's going to happen, we're going to fire this guy, this roomie has a gun, we don't want anything to happen here. So they come out and, you know, everything they're doing that protects them also protects the employer, and, you know, I can see in the future when they start getting liability doing, no, we don't do that, you call us when there's a problem, or they put themselves at risk. In other words, every time they do something that looks like they're invading your client's privacy, it's pretty easy to also say, given what they were told, you know, ah, they wanted to be aggressive, they didn't want to give them access to this, so I'm just worried about that problem if you win. I think there's two options when the officers arrive at a scene like this, right? And the one is they can side with the searcher and say, we're going to protect this search, we're going to make sure it happens. The other is that they can be present, they can do everything law enforcement's entitled to do, and escort Mr. Fortney with his belongings off the premises. They can even say, you know, we'll walk right next to you, we want to make sure that you leave this person, this, your employer no longer wants you to be present. If you were an officer, wouldn't you want the bag opened before you escort him out? Of course, but at that point, we're talking, we're now beyond what the Fourth Amendment allows. I mean, an officer, any time they've heard a rumor that someone has a gun, I or anyone in this courtroom, I believe, would want to know, want to see what's inside someone's bag once they've heard that rumor. But a rumor isn't sufficient under Florida v. J.L. and a whole line of Supreme Court cases for the officers to decide, we are now entitled to see what's inside this bag. And they can't assist a private party without, under the Fourth Amendment, absolutely, but without at least a policy or consent or some contractual right that the private person gets to do that either. I mean, we have this balance in our whole constitutional structure. But the employer could have said, you know, I'm sorry to have to do this, you're fired, I understand you have a gun, or there's some people who said you have a gun, we don't want you just to go back to your locker and get your bag and leave. We think that's dangerous. And so we've got some officers that are going to help us do this. That can't be done. It can be done as long as what do this means is we're going to go to the locker with you and escort you off. No, no, no. We're going to the locker and we're opening the bag first because we don't want you to have a backpack with, you know, 60 rounds. That's exactly right. Without some either factual basis that provides probable cause or without a contractual right or consent, that's right, they cannot simply say, we've heard a rumor, we're going to open your bag. That's very high risk. I don't believe it's more high risk than any other situation where law enforcement encounters someone where there's been a rumor that they have something on them. They can always ask questions, they can always ask consent. What they can't do is search the bag. That's the balance we've struck in our constitutional. The employee or employer could have searched the bag. The employer could not have searched the bag without consent or contractual right. Because the primacy of an individual's property rights under Ohio law and under U.S. law is paramount. So what's the Ohio case or statute that says the employer who has a policy banning guns can't say I want to look, I hear you, my understanding is you have a gun, it's a rumor, we'll stick with that, and they can't say I want to check your bag. I don't have a case that says that exactly. What I have is a collection of cases in 6 Ohio jurisprudence 3rd assault section 16 which says a person has the right to use reasonable force to prevent someone else from taking their property. And also in the section on trespass, 88 Ohio jurisprudence 3rd trespass section 32. This I think is worth noting. Even where a creditor legally enters property to repossess something. So they have the right to repossess. If the property objects and tells them to leave, they are now actually a trespasser. They now need to get a court order. The right of self-help to invade someone's property under Ohio law is secondary to the property rights of the owner. What they can do is go get a court order in that instance. So in that situation, the repossession, if you're coming in to repossess the property and I just say I don't want you to do that, that ends it? Yes. Right. That person becomes a trespasser at that point. And they have to leave. Again, they can go get a court order. And once there's a court order, again, the case law in Hensley v. Gassman, I would also direct the court to Middob v. City of Three Rivers, that's 684 Federal Appendix 522, which also collects a number of helpful cases on this. In the repossession and eviction. Can I ask you another question on good faith? Yes. Good faith exception. How does that work here? So what if the officer's, hypothetically, you get the officer on the stand and he says, yeah, I know how these rules work, and we were there, community caretaker, whatever the line the officer draws, and I never really thought we were doing this. We thought we were doing this at the direction of the employer. Why wouldn't good faith apply there? I don't know what there is to deter. The officer, at most, is making a mistake about when their conduct crosses the line into state action, and what's the benefit of suppressing the evidences? I'm about to hit my stop, but if I could answer your question. So when the police arrive in this situation and decide they're going to side with the side of the, on the side of the person that's performing a search, what I would suggest is they have a duty under the law to make sure that that search is lawful. Once they've decided to side with that, they can't simply rely on, probably this is okay. They need to do something. How would they know the rules of the employment? They wouldn't know the way. They can simply, they can ask. I mean, they have to do something. They can't simply show up and say, we're going to assume that this employer has a right over the property owner. They know, generally, a property owner can't, that there's no general right to search someone's belongings. Police are well trained in that. And so the employment context doesn't inalterably shift that. There's nothing magical about the employment context that says employers get to search their employees' bags. It's one private actor and another private actor, and the property owner has primary rights under Ohio law and under federal law. I reserve the. Super. Can I add? Yeah. I still want to get back to this one point, because it seems to me it makes a difference. Some of the conversation here sounds almost like it's a civil suit against the police officers. The supervisor knew that he was fired and was no longer an employer. And isn't the gravamen of your theory is that the supervisor did something wrong, but that he was emboldened by the police presence and that turns it into state action? It's not a question of whether the police did anything wrong here, is it? It's a question of did the supervisor do something wrong? I mean, I would quibble with some of the language, perhaps, but generally that's correct. But the question becomes, are the police entitled, right? Can they prevent their own responsibility for the actions here by emboldening a private actor, by sheltering the private actor, standing next to them while they perform the search to make sure that the property owner doesn't get inside that bag? And the answer under the law is yes. I mean, the whole point is whether it's a state action search. Yes. And that's the punchline. Right. Absolutely. So it doesn't really matter whether the employer's opening the bag or the officer's opening the bag. The whole debate here is whether it's state action and therefore the exclusionary rule applies. That's exactly right. And that's my initial answer to Judge Guy about quibbling with language. It becomes important at that point, right? Because emboldening to the point of preventing someone from exercising their right to object and resist, and that's in Hensley v. Gassman, that's in Middaw, that's in Soel Delver v. County of Cook, that's where the police presence becomes state action when they take those actions. When you're talking about good faith, the question isn't what the employer did. It's about deterring officers, not employers. That's exactly right. And when the officers, I mean, I have to note that the government didn't raise good faith below. It's been forfeited. But regardless, the officers decided, I mean, by their own testimony, they were going to side with the searcher. They were going to make sure that this search happened. And by doing that, it was incumbent on them to do at least one step of finding out, is there any basis for this search? And by doing nothing, good faith doesn't apply. Thank you. Thanks. You get your rebuttal. Mr. Ewing? Thank you, Your Honor. Good morning. May it please the Court, James Ewing for the United States. Because this was a private search that did not implicate the Fourth Amendment, this Court should affirm the judgment of the District Court. When Mr. Ashbrenner planned, initiated, and executed this search, he was not acting as an agent of the police or an agent of the government. He was acting as a responsible supervisor who was looking out for his own and his employees' safety. Chronologically, Ashbrenner decided that he was going to conduct this search, called the police so that they could be present for his own safety and for his employees' safety, told Mr. Fortney he was going to search his bag, went, told Mr. Fortney to open his locker. These are all personal things that Mr. Ashbrenner did. Mr. Ashbrenner is the one that reached in, grabbed the backpack, took it out, put it on a bench. Mr. Ashbrenner is the one that unzipped all seven zipper pockets of that backpack. Mr. Ashbrenner planned, initiated, and executed this search from start to finish. So all of that would have happened whether the police had been there or not. But it didn't even matter if the police were there. He would have gotten him, fired him, gotten his bag, searched it. Everything would have been the same. The police presence made no difference at all. So this goes to Appellant's ability to resist argument or the concept that the police impeded his ability to resist this search of his backpack. Killed his right to object. Right. Correct. And there are a number of problems with that. One, that's not factually supported by the record. If you look at page ID 65 through 67, Mr. Ashbrenner was adamant that Mr. Fortney was not free to leave. He had not finished dismissing him. He was going to search that backpack before Mr. Fortney left. And it's not, he hasn't, if his claim, to the extent his claim depends on this but-for test, that but-for the police's presence outside the office, Mr. Fortney would have simply walked out, grabbed his backpack and left. He hasn't made that out. At page ID 113, Mr. Ashbrenner says, I was surprised that the police weren't still in the office where I put them. I didn't know, he didn't, he didn't, when he came, when everybody came out of the office and the police were standing there, that wasn't some sort of coordinated thing. And Mr. Asherill, Officer Asherill also said- Which way does that cut? I don't know which way. Well, if his, it's a factual argument to the extent of, to the extent that his claim depends on this but-for the police's presence, I simply would have marched out of the office, grabbed my backpack and left. He hasn't made that out. And under Hill, this court has to view the evidence in the light most favorable to the government. And he hasn't made that out as a matter of fact. That's one. What about the fact that the officers ask him whether he has a permit for the gun? What does that have to do with community caretaking and making sure no violence explodes on the scene? That looks like classic law enforcement. Regarding once they're at the locker. Well, once they're at the locker, Your Honor, there's still the fact that, that the police are present there does not make, does not somehow transform this search by Mr. Ashburner into a private search. That's why I didn't ask the question based solely on presence. I asked the question based on their question. Do you have a permit for this? Which sounds like a question of law enforcement, not let's make sure violence doesn't break out. Regarding that, that would be more along the lines of, I think that's one way, that's one potential way to read it. But another potential way to read it would be that they're trying, they haven't ascertained at that point when they asked the question whether there was a gun in the bag or not. So if someone, in other words, they haven't uncovered the bag yet. So they're trying to, they're trying to, the police are trying to, so what is the situation we're trying to deal with here? This person has just been fired, not incidentally. Maybe I misremembered this. I thought they asked, do you have a permit after the gun comes out? No, no, it was before. So they asked whether, and he says, yes, I have a permit. They ask it because he says he has a gun in the bag? Is that how the question comes up? I'm forgetting. No, they simply ask him as Mr. Ashburner is searching the bag, do you have a concealed carry permit or something along those lines? The gun has not been uncovered at that point. So they're trying to assess the situation. They're there to try to keep the peace. And we know from Hensley v. Gassman says, the police's presence solely to keep the peace does not transform an otherwise private search into a public search. This really gets to my second problem with their argument that it was his property interest in the bag was chilled. Again, going back to what, even if he can make out the case that but for the police's presence outside of the office, he simply would have marched out, gotten his bag and leave, which we don't think the facts support that. But even if he can make that out, once everyone is at the locker, it's still Ashburner doing the search. It's still Ashburner reaching into the locker, taking the bag out. It's still Ashburner opening up every pocket of the bag. Ashburner could have made a different decision at that point. He's still the one. The private individual is still the one that is conducting the search. But of course he is. That's a fact. But if he wasn't, you don't even bring in the state actor. The fact that he was the one is what triggers the state actor analysis. That's right, Your Honor. But I guess my point is that Ashburner, for example, once they're at the lockers, because again, their argument seems to rely on this concept that but for these police outside the office when I walked out, there wouldn't have even been any search at all. And so to respond to that, it's the concept that even once they're at the lockers, it's still Ashburner performing the search. Ashburner could have said, for example, But he doesn't think he can object at that point because the police are standing there. It doesn't matter whether it's the private party. I mean, that's the whole point of the case is at what point is the private party being aided, assisted, whatever, by the police. And we've formulated the test that if the it's from the point of view of the person who's getting searched, right? If his right to object is being chilled, whether or not it's the private actor doing the search, right? Well, we would say that this really goes to kind of the continuum that Hensley v. Gassman sets up, where you have a continuum between mere presence, solely to keep the peace, on the one hand, and really something that what akin to happened in the Hensley case itself, which was a repossession case where the police ended up breaking the window of the car, pulling the erstwhile owner out of the car so that the repo man could take the car. So that's kind of the other end of the spectrum. What we're saying is that we're way over here on mere presence. And Hensley v. Gassman says that mere presence solely to keep the peace does not transform a private search into a public search. Let me get back a minute to one of Judge Sutton's questions. As I remember the sequence, when they asked him about did he have a gun in his pack, he either said he didn't or he didn't remember, but he did advance that he had a cartridge in the bag. And wasn't that what triggered the police question on do you have a permit? That's right, Your Honor. Now that you remind me of that, he said that he had a .45 caliber cartridge and that he later described it almost as a museum piece or something like that, not a live cartridge. But that was the response. So why the question about do you have a license for it? Well, it would be a license. Excuse me, Your Honor. Doesn't that sound like law enforcement activity? Regarding the cartridge itself? Yes. Because the cartridge by itself is not dangerous. I could see if there's a gun at that point. Then you asked do you have a permit. Maybe that makes some sense because maybe that makes it less dangerous. This is a law-abiding citizen. But why are they asking for a permit for a cartridge when the cartridge by itself is not dangerous? Well, I guess we would still – It sounds like law enforcement. I take that point, Your Honor. I think that the interaction at the locker was still kind of the police trying to assess the situation. What are we dealing with here? And it goes to your point of kind of no good deed goes unpunished. We know from the Davis case that the sole reason for the exclusionary rule is to deter police misconduct. And there was simply no police misconduct to deter here. But you guys don't seem to be raising a good faith argument, are you? Your Honor, in our brief, we raised a community caretaker exception, which was laid out in this court in 2017 in the Lewis case. And really what the community caretaker – Is that an exception to the exclusionary rule? Well, it's not an exception so much that the – That's a state action inquiry. I mean, the way I see it, it seems like you've come, and I always admire advocates that focus on what they think is the key issue. And I think it is the key issue. Is this state action? That just seems to be your argument. It's not about reasonable expectations of privacy. It's not about good faith exceptions. It's on is there state action. We think that this court can decide the case because this was a private search, and therefore it doesn't implicate the Fourth Amendment. However, if this court were to disagree and thought that on that continuum that Hensley v. Gassman sets out, that the officers' actions were not mere presence but they were more than that, we would point this court to the Lewis case, which it talks about when the police do things to keep the peace and to keep people safe. They're not to investigate crime necessarily. That falls under the community caretakers. That's what we expect from the police. If you think about in this scenario, Mr. Ashbrenner has got what he considers potentially a volatile issue on his hands. He calls the police. They arrive. They are not there to – As the district court properly found at page 152, page ID 152, the police were there to stand by while Ashbrenner utilitarianly carried out his intentions. So what is there really to deter here? Isn't this what we expect from police in our society, to keep some volatile situation from escalating? I ask the no good deed goes unpunished point because it does bother me, but I just wonder why this can't be dealt with in a training situation. You do have this separate community caretaker function. We do want the police to honor these calls and then help the employer out, but that when they're there, there are some rules. One really easy one would be just to say, be telling the individual, Fortney, we're not here for law enforcement purposes. We're just here to make sure no one is hurt. That's all we're here for. Relax. You don't have to raise your hands. And if that's the way they present it, they solve the whole problem because that testimony will be in front of us. That's not what happened here. And that doesn't seem that hard to fix. That just seems like training. The police officers' actions really come after the fact point out the reason why they were there in the first place, even after they found the firearm, which ended up being illegal because it violated the National Firearms Act. What they did at that point was they simply escorted Fortney off, gave him a receipt, and checked his truck, which he allowed them to do, and let him leave. So that was driving home. They were there, and the Lewis case talks about the police officers' actions being, quote, totally divorced from investigating crime. And that's why they were here. They didn't go to the Aldi warehouse on their own. They went in response to Ashburner's call to, hey, come be present in order for this volatile situation to not kick off into something worse. And we also know from the record that the reason that Fortney was being fired was because of an allegation that was made by another Aldi employee. So that makes the atmosphere even more fraught, and there's even more reason for the police to be there. Did Aldi have a policy of searching their employees' lockers? So there's nothing in the record about a search policy. What is in the record is that they had a policy, which was discussed in the previous argument, that there were no firearms on the property. That was in their company handbook. That was also published on a sign right next to the employee entrance. So Fortney had no right to have that firearm on Aldi property. He also didn't. So to the extent that he has argued some property interest in the firearm, he didn't have that. Now, there's one point. Again, let me ask you this question, though. Let's assume there were no police there at all. He's fired. Would the supervisor have a right then to go search his bag? He's a fired guy and he's leaving. Does the supervisor still have a right to search that bag? We would say yes because of a number of reasons. Again, the propriety or impropriety of Ashbrenner's conduct doesn't really answer the question here. But to answer your honors, in other words, it doesn't answer the question of whether the Fourth Amendment applies and the evidence should be excluded. But we think that it would have been proper because it's part and parcel to him. It's essentially one and the same of his termination. Let's get you off of these grounds in a safe way. It's all these locker. They have a policy that there's no firearms on the grounds. So we think that his actions were reasonable. I see I'm running out of time. I just wanted to make one quick point about the Soldall case, which is cited by appellant through the Hensley v. Gassman case. The Soldall case is the Seventh Circuit case about the repossession of a trailer. And if you read at page 1075 of the Soldall case, it says the police prevent a defendant from exercising his right to resist in that case. But it says that by itself may not have made them actual participants. So even then, they may not have been actual participants in the search. If there are no further questions, we would ask that you affirm the district court. All right, thank you. Appreciate your argument. First, my colleague said that Fortney hasn't made out that he would have taken his backpack had the police not been there. The district court found that he would have. It's at page ID 152 and also at 374 that Mr. Fortney would have grabbed his backpack, the first one, and the second was he would have grabbed his bag. The district court added in that second order that would have been a confrontational act. And that's where the district court erred because it flipped the law on its head. The confrontational act was Ashbrenner searching without a lawful reason to. This was not solely to keep the peace. Why is the policy against handguns or whatever, guns on the property, why doesn't that flip the presumption in favor of the employer? Because it doesn't increase the employer's right to search anything. It increases the employer's right to exclude people from the property. If they have a gun, it increases the employer. But the employer is not governed by Provo Cause Fourth Amendment. So there's a rumor that you have a gun and we prohibit guns on the property. I'm going to look at your bag. Right. And, again, although there's no Fourth Amendment, that doesn't give the fact that there's a policy against guns doesn't mean that at will or based on a rumor the employer has a right to search. They could, of course, have a policy that employees could consent to that would allow them to search. But that policy, just as – This is just a matter of state law, I assume? Yes. We don't know, other than the ogre, trespass, and assault sections, are there any cases – we don't have any cases in the briefs or anything on this? We don't, and I can represent to the court. I was not able to find any cases on the point that Your Honor is raising. On the common law right of property or the property owner to exclude an employer who has a policy? That's right. Did you look outside of Ohio? I'm just curious. I looked under Ohio law and Sixth Circuit generally. I didn't look nationwide for time constraints. I would point – under the law, this was more than keeping the peace or mere presence, and I would point again to Soldall and Middaw. Soldall, there was presence plus statements. The officers arrived, escorted employees of the repossessor onto the property, and said, we're here to make sure that you don't interfere. The actions here had the same effect. And then in Middaw, they arrived, they again escorted the repossessor onto the property. They didn't make any statements, but they positioned themselves in such a way as to frustrate the sight line and the ability of the property owner to object, and this court found that that was sufficient state action. Is he in jail? He is in jail. Eight months sentence, is he still in jail? He entered on January 2nd, I believe. So, yeah, he's due out in September. I see my time has expired, so unless the court has any questions. Any other questions? Just one. The Fourth Amendment prohibits unreasonable search and seizures. Is it possible that even under this set of circumstances, the search was reasonable? Two points to that, Your Honor, quickly. The first is the government didn't raise that below. There's a footnote in the brief on appeal. But the second, to answer on the merits, we contend it's not reasonable, both under probable cause, reasonable suspicion standards, but then also under common law standards, contract, consent. But this is where the community caretaker would also come into play? Could it be reasonable under the community caretaker? But the community, my answer to that, the community caretaker function doesn't allow police to perform searches. It allows police to appear. It allows police to question. It allows the police to be present. It doesn't allow them to perform searches or assist in private searches. Thank you. All right. Thanks to both of you for your helpful briefs and for answering our questions. We always appreciate that. It's a tricky case, so thanks very much. The case will be submitted in the...